**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

YUBA COUNTY WATER AGENCY,

Plaintiff,

v.

EILEEN SOBECK, et al.,

Defendants.

Case No. 1:20-cv-03297-TNM

## MOTION TO DISMISS, TRANSFER, OR STAY AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

Defendants Eileen Sobeck, E. Joaquin Esquivel, Dorene D'Adamo, Tam M. Doduc, Sean Maguire, Laurel Firestone, and the California State Water Resources Control Board ("State Board" and, collectively, "State Defendants"), by and through their attorneys, move to dismiss this case under Fed. R. Civ. P. 12(b)(1),[1] or, in the alternative, to transfer the case to the U.S. District Court for the Eastern District of California, or, in the alternative, to stay this case pending the outcome of related litigation in the U.S. Court of Appeals for the Ninth Circuit and in California state court.

Yuba County Water Agency ("Plaintiff" or "YCWA") has filed a Complaint against State Defendants challenging the State Board's issuance of a water quality certification (the "Certification") under section 401 of the Clean Water Act, 33 U.S.C. § 1341, and relevant state

---

[1] State Defendants submit that no administrative record is necessary for the Court to resolve the issues of law raised by this motion. Accordingly, State Defendants have concurrently filed a motion for relief from complying with Local Civil Rule 7(n), which Plaintiff Yuba County Water Agency does not oppose.

law, for the Yuba River Development Project ("YRDP"), a hydroelectric project which YCWA owns and operates on the Yuba, North Yuba, and Middle Yuba Rivers and on Oregon Creek, in the Sacramento River Basin.

The State Board issued the Certification subject to numerous conditions designed both to ensure that the YRDP would comply with state water quality laws and to protect critical aquatic resources of the State—namely, the Yuba River, its tributaries, and downstream waters of the State—which the State holds in trust for the benefit of all citizens of California.

The Certification would ordinarily become an enforceable component of any operating license issued to YCWA by the Federal Energy Regulatory Commission ("FERC"). However, two months before the State Board issued its Certification, FERC issued an order finding that the State Board had waived its authority to issue a certification for the YRDP. The State Board requested rehearing and issued its Certification while that request was still pending. FERC denied rehearing, and the State Board has petitioned for review of FERC's waiver order in the U.S. Court of Appeals for the Ninth Circuit. The State Board's Opening Brief is currently due on April 16, 2021.

YCWA's Complaint must be dismissed for lack of jurisdiction. Because the State Board has amended its Certification and is currently entertaining petitions for reconsideration, and because the Certification has no legal effect until and unless the Ninth Circuit vacates FERC's waiver order, YCWA's claims are not ripe for review. For the same reasons, YCWA has suffered no injury-in-fact sufficient to establish Article III standing. Even if the Certification had legal effect, YCWA is a political subdivision of the State and therefore lacks Article III standing to bring its constitutional due process claims. This Court also lacks jurisdiction over YCWA's claims because all State Defendants have sovereign immunity.

Should this Court decline to grant State Defendants' motion to dismiss, it should transfer the case to the U.S. District Court for the Eastern District of California. That forum is more convenient for all parties, and a transfer would be in the interests of justice.

In the alternative, this Court should stay the litigation. This Court has inherent authority to stay, and should do so given that the issues may never need to be litigated depending on the outcome of the Ninth Circuit challenge to FERC's waiver order. Further, the *Pullman* and *Colorado River* abstention doctrines counsel against consideration of YCWA's claims now, given that YWCA's claims will be adjudicated in state court, where Plaintiff has filed a nearly identical complaint.

Pursuant to Local Civil Rule 7(m), counsel for State Defendants, in a good-faith effort to determine whether there is any opposition to the relief sought and to narrow any areas of disagreement, discussed with YCWA's counsel the motions to transfer the case to the Eastern District of California and to stay the case pending resolution of the State Board's appeal of FERC's waiver order or YCWA's state court challenge to the Certification. YCWA opposes these motions, and counsel were unable to narrow the areas of disagreement.

A Memorandum of Points and Authorities in support of this Motion is attached hereto. Pursuant to Local Civil Rule 7(f), State Defendants respectfully request an oral hearing on this Motion at a time and place to be set by the Court.

Dated: February 8, 2021                  Respectfully submitted,

                                         XAVIER BECERRA
                                         Attorney General of California


                                         /s/ Adam Levitan
                                         Adam Levitan
                                         Deputy Attorney General, CA SBN 280266
                                         300 S. Spring Street, Suite 1702
                                         Los Angeles, CA 90013
                                         Telephone: (213) 269-6332
                                         Email: Adam.Levitan@doj.ca.gov

                                         Attorneys for Defendants the California State
                                         Water Resources Control Board, Eileen Sobeck,
                                         E. Joaquin Esquivel, Dorene D'Adamo, Tam M.
                                         Doduc, Sean Maguire, and Laurel Firestone

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ......................................2

I.     The Yuba River Development Project ..........................................................2

II.    Section 401 Certification Procedures............................................................3

III.   YCWA's Application for Section 401 Certification......................................5

IV.    The State Board's Administrative Reconsideration Processes ....................6

V.     YCWA's Judicial Challenges to the Certification and Related Litigation ..7

ARGUMENT ........................................................................................................8

I.     This Court Lacks Jurisdiction to Hear YCWA's Claims............................9

       A.    YCWA's Lawsuit Must be Dismissed Because Its Claims Are Not
             Ripe ................................................................................................10

             1.    YCWA's Claims Are Not Fit For Review........................11

             2.    YCWA Will Suffer No Hardship from Deferred Judicial
                   Review ............................................................................15

       B.    YCWA Lacks Article III Standing .............................................16

             1.    YCWA Has Suffered No Injury-In-Fact Sufficient to
                   Confer Article III Standing ..............................................16

             2.    Even if YCWA Could Otherwise Demonstrate Standing, It
                   Is A Political Subdivision of the State and Therefore Lacks
                   Standing to Bring its Constitutional Due Process Claims .18

       C.    Eleventh Amendment Immunity Bars Plaintiff's Suit ..................19

             1.    State Defendants' Eleventh Amendment Immunity Has Not
                   Been Abrogated By Congress Nor Has It Been Waived For
                   Any of Plaintiff's Claims ..................................................20

             2.    The *Ex Parte Young* Exception Does Not Apply to
                   YCWA's Claims ...............................................................21

II.    Any Remaining Claims Should be Transferred to the Eastern District of
       California ..................................................................................................23

       A.    Standards for Discretionary Transfer.............................................23

       B.    Venue Would be Proper in the Eastern District of California .......24

       C.    The Balance of Private and Public Interests Favors Transfer........24

i

**TABLE OF CONTENTS
(CONT'D)**

**Page**

        1.      Private factors favor transfer ............................................. 25

        2.      Public factors favor transfer ............................................. 26

III.    Even If This Court Retains Jurisdiction Over This Case, It Should Be Stayed ....................................................................................... 29

    A.    This Court Should Use Its Inherent Authority to Stay the Case Pending the Ninth Circuit Litigation ............................................. 29

    B.    This Court Should Stay this Case Pending the Outcome of the Identical State Court Litigation ..................................................... 31

        1.      The *Pullman* Abstention Doctrine Counsels In Favor of a Stay Pending Resolution of the Identical State Court Litigation .................................................................... 31

        2.      The *Colorado River* Doctrine Also Counsels In Favor of a Stay Pending Resolution of the Identical State Court Litigation .................................................................... 35

CONCLUSION ................................................................................. 40

CERTIFICATE OF SERVICE .......................................................... 41

# TABLE OF AUTHORITIES

**Page**

CASES

*AAR Int'l, Inc. v. Nimelias Enters. S.A.*
    250 F.3d 510 (7th Cir. 2001) ...................................................... 36

\* *Abbott Labs. v. Gardner*
    387 U.S. 136 (1967).................................................................. 10

*Air Line Pilots Ass'n v. Miller*
    523 U.S. 866 (1998).................................................................. 29

*Al-Ahmed v. Chertoff*
    564 F.Supp.2d 16 (D.D.C. 2008) ............................................. 24

*Alaska Wilderness League v. Jewell*
    99 F.Supp.3d 112 (D.D.C. 2015))............................................ 27

*Am. Petroleum Inst. v. EPA*
    683 F.3d 382 (D.C. Cir. 2012).......................................... 10, 11

*Ambrosia Coal & Const. Co. v. Pages Morales*
    368 F.3d 1320 (11th Cir. 2004) ............................................... 37

*American Bankers Ins. Co. v. First State Ins. Co.*
    891 F.2d 882 (11th Cir. 1990) ................................................. 39

*Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*
    762 F.2d 205 (2d Cir. 1985)............................................... 37, 39

\* *Atascadero State Hospital v. Scanlon*
    473 U.S. 234 (1985).................................................................. 20

*Atkinson v. Grindstone Capital, LLC*
    12 F.Supp.3d 156 (D.D.C. 2014) ............................................. 38

*Belize Soc. Dev. Ltd. v. Gov't of Belize*
    668 F.3d 724 (D.C. Cir. 2012).................................................. 30

*Bennett v. Spear*
    520 U.S. 154 (1997).................................................................. 11

*C–Y Dev. Co. v. City of Redlands*
    703 F.2d 375 (9th Cir. 1983) ................................................... 33

*Authorities chiefly relied upon.                iii

## TABLE OF AUTHORITIES
## (CONT'D)

**Page**

*California Correctional Peace Officers Ass'n v. State Personnel Bd.*
   10 Cal.4th 1133 (1995) .................................................................................. 4, 13

*California v. U.S.*
   438 U.S. 645 (1978) ........................................................................................ 35

*Ciba–Geigy Corp. v. EPA*
   801 F.2d 430 (D.C. Cir. 1986) ....................................................................... 13

*Cierco v. Mnuchin*
   857 F.3d 407 (D.C. Cir. 2017) ....................................................................... 17

*City of Dania Beach, Fla. v. FAA*
   485 F.3d 1181 (D.C. Cir. 2007) ..................................................................... 12

*City of San Juan Capistrano v. California Public Utilities Comm'n*
   937 F.3d 1278 (9th Cir. 2019) ....................................................................... 18

*City of Trenton v. New Jersey*
   262 U.S. 182 (1923) ........................................................................................ 18

* *Clapper v. Amnesty Int'l USA*
   568 U.S. 398 (2013) .................................................................................. 16, 17

*Clifton Power Corp. v. FERC*
   294 F.3d 108 (D.C. Cir. 2002) .................................................................. 13, 14

*Coal. for Clean Air v. VWR Int'l, LLC*
   922 F.Supp.2d 1089 (E.D. Cal. 2013) ............................................................ 39

* *Colorado River Water Conserv. Dist. v. U.S.*
   424 U.S. 800 (1976) ................................................................ 35, 36, 37, 39, 40

*Delaware Riverkeeper Network v. Sec'y Pennsylvania Dep't of Envtl. Prot.*
   833 F.3d 360 (3d Cir. 2016) ........................................................................... 20

*Devia v. Nuclear Regulatory Comm'n*
   492 F.3d 421 (D.C. Cir. 2007) .................................................................. 11, 15

*Edge Inv., LLC v. D.C.*
   927 F.3d 549 (D.C. Cir. 2019) ....................................................................... 36

* *Ex parte Young*
   209 U.S. 123 (1908) ................................................................................ 21, 22, 23

iv

# TABLE OF AUTHORITIES
## (CONT'D)

**Page**

*Fletcher v. Evening Star Newspaper Co.*
  133 F.2d 395 (D.C. Cir. 1942) ................................................................................... 8

*\* Foster-el v. Beretta U.S.A. Corp.*
  163 F.Supp.2d 67 (D.D.C. 2001) ................................................................. 37, 38, 39

*Fudge v. Laguna Beach*
  32 Cal.App.5th 193 (2019) ...................................................................................... 39

*Gen. Reinsurance Corp. v. Ciba-Geigy Corp.*
  853 F.2d 78 (2d Cir. 1988) ..................................................................................... 39

*Giardina v. Fontana*
  733 F.2d 1047 (2nd Cir. 1984) ............................................................................... 39

*Gilbertson v. Albright*
  381 F.3d 965 (9th Cir. 2004) .................................................................................. 32

*Haase v. Sessions*
  835 F.2d 902 (D.C. Cir. 1987) .................................................................................. 9

*Handy v. Shaw, Bransford, Veilleux & Roth*
  325 F.3d 346 (D.C. Cir. 2003) ........................................................................... 29, 36

*Holistic Candlers & Consumers Ass'n v. FDA*
  664 F.3d 940 (D.C. Cir. 2012) ................................................................................ 11

*Hollingsworth v. Perry*
  570 U.S. 693 (2013) ............................................................................................... 16

*Hoopa Valley Tribe v. FERC*
  913 F.3d 1099 (D.C. Cir. 2019) ............................................................................. 4, 5

*Hulley Enters. Ltd. v. Russian Fed'n*
  211 F.Supp.3d 269 (D.D.C. 2016) ........................................................................... 30

*Hurd v. D.C., Gov't*
  864 F.3d 671 (D.C. Cir. 2017) .................................................................................. 8

*Hurley v. Heilig*
  28 F.Supp.2d 33 (D.D.C. 1998) ............................................................................... 38

*Idaho v. Coeur d'Alene Tribe*
  521 U.S. 261 (1997) .......................................................................................... 21, 22

# TABLE OF AUTHORITIES
## (CONT'D)

Page

*Ins. Co. of Pa. v. Syntex Corp.*
964 F.2d 829 (8th Cir. 1992) .......................................................................... 40

* *Int'l Painters & Allied Trades Indus. Pension Fund v. Painting Co.*
569 F.Supp.2d 113 (D.D.C. 2008) ............................................................. 29, 31

*Islamic Republic of Iran v. Boeing Co.*
477 F.Supp. 142 (D.D.C. 1979) ................................................................ 25, 28

*Islander East Pipeline Co., LLC, v. State of Connecticut Dep't of Envtl. Prot.*
482 F.3d 79 (2d Cir. 2006) .............................................................................. 20

*Johnson v. Comm'n on Presidential Debates*
202 F.Supp.3d 159 (D.D.C. 2016) ..................................................................... 6

*Joseph v. U.S. Civil Serv. Comm'n*
554 F.2d 1140 (D.C. Cir. 1977) ........................................................................ 6

*Knudsen Corp. v. Nevada State Dairy Comm'n*
676 F.2d 374 (9th Cir. 1982) .......................................................................... 32

* *Kollsman v. Los Angeles*
737 F.2d 830 (9th Cir. 1984) .................................................................... 31, 33

* *Landis v. N. Am. Co.*
299 U.S. 248 (1936) .................................................................................. 29, 30

*Leyva v. Certified Grocers of Cal., Ltd.*
593 F.2d 857 (9th Cir. 1979)) .......................................................................... 30

*Lujan v. Defenders of Wildlife*
504 U.S. 555 (1992) ........................................................................................ 16

*Mandan, Hidatsa and Arikara Nation v. U.S. Dep't of the Interior*
358 F.Supp.3d 1 (D.D.C. 2019) ........................................................................ 27

*Melcher v. FCC*
134 F.3d 1143 (D.C. Cir. 1998) ....................................................................... 13

*Montanore Minerals Corp. v. Bakie*
867 F.3d 1160 (9th Cir. 2017) ......................................................................... 39

*Montgomery v. STG Int'l, Inc.*
532 F.Supp.2d 29 (D.D.C. 2008) ..................................................................... 24

# TABLE OF AUTHORITIES
## (CONT'D)

Page

*Moorer v. Demopolis Waterworks & Sewer Bd.*
374 F.3d 994 (11th Cir. 2004) ................................................................. 37

*Morales v. Trans World Airlines, Inc.*
504 U.S. 374 (1992) ............................................................................. 22

*Moran v. U.S. Capitol Police Bd.*
820 F.Supp.2d 48 (D.D.C. 2011) ............................................................. 9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
460 U.S. 1 (1983) ........................................................................... 36, 38

*Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*
417 F.3d 1272 (D.C. Cir. 2005) ............................................................. 11

*Nat'l Mining Ass'n v. McCarthy*
758 F.3d 243 (D.C. Cir. 2014) ............................................................... 12

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*
538 U.S. 803 (2003) ....................................................................... 10, 15

*Ngonga v. Sessions*
318 F.Supp.3d 270 (D.D.C. 2018) ....................................................... 24, 25

*NRDC v. EPA*
643 F.3d 311 (D.C. Cir. 2011) ........................................................... 11, 15

*Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n*
461 U.S. 190 (1983) ............................................................................. 10

* *Pennhurst State School & Hospital v. Halderman*
465 U.S. 89 (1984) ......................................................................... 19, 21

*PUD No. 1 of Jefferson Cty. v. Washington Dep't of Ecology*
511 U.S. 700 (1994) .............................................................................. 3

*R.R. Street & Co. Inc. v. Transport Ins. Co.*
656 F.3d 966 (9th Cir. 2011) ................................................................. 39

* *Railroad Comm'n of Texas v. Pullman Co.*
312 U.S. 496 (1941) ................................................................... 31, 32, 34

* *Rancho Palos Verdes Corp. v. City of Laguna Beach*
547 F.2d 1092 (9th Cir. 1976) ......................................................... 33, 34

# TABLE OF AUTHORITIES
## (CONT'D)

**Page**

*Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*
  324 F.3d 726 (D.C. Cir. 2003) ...................................................................... 15

*Rivera-Puig v. Garcia-Rosario*
  983 F.2d 311 (1st Cir. 1992) .................................................................. 32, 34

*Robinson v. Salazar*
  838 F.Supp.2d 1006 (E.D. Cal. 2012) ........................................................ 38

*Rogers v. Brockette*
  588 F.2d 1057 (5th Cir. 1979) ................................................................... 18

*S. Macomb Disposal Auth. v. Township of Washington*
  790 F.2d 500 (6th Cir. 1986) ..................................................................... 18

*\* Saddler v. AMEC Foster Wheeler Environment & Infrastructure, Inc.*
  253 F.Supp.3d 210 (D.D.C. 2017) ........................................................ 36, 37

*Sallyport Global Services, Ltd. V. Arkel Int., LLC*
  78 F.Supp.3d 369 (D.D.C. 2015) ............................................................... 27

*Schneider Nat'l Carriers, Inc. v. Carr*
  903 F.2d 1154 (7th Cir. 1990) ................................................................... 36

*Seminole Tribe of Florida v. Florida*
  517 U.S. 44 (1996) ..................................................................................... 20

*Seneca Ins. Co., Inc. v. Strange Land, Inc.*
  862 F.3d 835 (9th Cir. 2017) ..................................................................... 37

*\* Shawnee Tribe v. U.S.*
  298 F.Supp.2d 21 (D.D.C. 2002) ......................................................... 23, 25

*Sierra Club v. U.S. Dep't of Energy*
  825 F.Supp.2d 142 (D.D.C. 2011) ............................................................... 9

*Spokeo, Inc. v. Robins*
  136 S.Ct. 1540 (2016) ................................................................................ 17

*State v. U.S. Army Corps of Engineers*
  304 F.Supp.3d 56 (D.D.C. 2018) ..................................................... 25, 27, 29

*Steel Co. v. Citizens for a Better Envt.*
  523 U.S. 83 (1998) ..................................................................................... 10

# TABLE OF AUTHORITIES
## (CONT'D)

**Page**

*Summers v. Earth Island Institute*
555 U.S. 488 (2009) ................................................................................ 17

*Travelers Indemnity Co. v. Madonna*
914 F.2d 1364 (9th Cir. 1990) ................................................................ 38

\* *Trout Unlimited v. U.S. Dept. of Agriculture*
944 F.Supp. 13 (D.D.C. 1996) ...................................................... 27, 28, 29

*Turlock Irr. Dist. v. FERC*
786 F.3d 18 (D.C. Cir. 2015) ................................................................. 16

*Tweed-New Haven Airport Auth. v. Tong*
930 F.3d 65 (2d Cir. 2019) .................................................................... 19

*U.S. v. Morros*
268 F.3d 695 (9th Cir. 2001) ................................................................. 32

*United Services Auto. Assn. v. Muir*
792 F.2d 356 (3d Cir. 1986) .................................................................. 32

*Wade v. FCC*
986 F.2d 1433 (D.C. Cir. 1993) ........................................................ 13, 14

\* *Western Watersheds Project v. Jewell*
69 F.Supp.3d 41 (D.D.C. 2014) ............................................................ 27

*Will v. Michigan Dep't of State Police*
491 U.S. 58 (1989) ................................................................................ 19

\* *Williams v. Mayor of Baltimore*
289 U.S. 36 (1933) .......................................................................... 18, 19

\* *XP Vehicles, Inc. v. Dep't of Energy*
118 F.Supp.3d 38 (D.D.C. 2015) ..................................................... 9, 10, 11

*Yellow Freight System, Inc. v. Donnelly*
494 U.S. 820 (1990) .............................................................................. 39

*Ysursa v. Pocatello Educ. Ass'n*
555 U.S. 353 (2009) .............................................................................. 18

## TABLE OF AUTHORITIES
## (CONT'D)

Page

**CONSTITUTIONAL PROVISIONS**

United States Constitution
 * Amendment XI ........................................................................................ 9, 19, 20, 21

**STATUTES**

15 United States Code
 § 717r(d)(1) .................................................................................................. 20

28 United States Code
 § 1367 ................................................................................................................ 8
 § 1391(b) ......................................................................................................... 24
 § 1404(a) ............................................................................................. 23, 24, 26

33 United States Code
 § 1341 .................................................................................................... 1, 3, 26
 § 1341(a)(1) ...................................................................................................... 4
 § 1341(d) ........................................................................................................... 3

California Water Code
 § 175 ................................................................................................................ 34
 § 181 ............................................................................................... 24, 25, 34
 § 13050(j) .......................................................................................................... 3
 § 13160 .............................................................................................. 3, 6, 34, 35
 §§ 13240-13248 ............................................................................................... 3
 § 13330 ...................................................................................................... 4, 13
 App. § 84-1 ..................................................................................... 3, 18, 24, 25
 App. § 84-3 .................................................................................................... 19
 App. § 84-26 .................................................................................................. 28

**REGULATIONS**

Cal. Code Regs., Title 23
 § 3831 .............................................................................................................. 34
 § 3835-3838 ................................................................................................... 34
 § 3837(b) ........................................................................................................... 5
 § 3838(a) .................................................................................................... 3, 34
 § 3867 ................................................................................................................ 7
 § 3867.1 ............................................................................................................. 7
 § 3869 ................................................................................................................ 7

## TABLE OF AUTHORITIES
## (CONT'D)

Page

**COURT RULES**

Federal Rule of Evidence
    Rule 201 ................................................................................................ 6, 8

Federal Rules of Civil Procedure
    * Rule 12(b)(1) ........................................................................................ 9
    Rule 15 ................................................................................................... 12

## INTRODUCTION

The Yuba River Development Project ("YRDP" or "Project") is a hydroelectric project owned and operated by Plaintiff Yuba County Water Agency ("YCWA" or "Plaintiff") on the Yuba, North Yuba, and Middle Yuba Rivers and Oregon Creek, in the Sacramento River Basin. Because its existing operational license was expiring, in 2014, YCWA requested a new license from the Federal Energy Regulatory Commission ("FERC"). To obtain a new license, YCWA was required to seek from the California State Water Resources Control Board ("State Board") a certification, pursuant to section 401 of the Clean Water Act, 33 U.S.C. § 1341 ("Section 401"), and relevant state law, that the YRDP would comply with state water quality laws.

On July 17, 2020, the State Board issued a Section 401 Certification for the YRDP (the "Certification"), and included numerous conditions to ensure that the YRDP would not violate state law. Ordinarily these conditions would become enforceable once FERC incorporates them into YCWA's renewed license to operate YRDP. However, two months earlier, FERC had issued an order finding that the State Board had waived its authority to issue a Section 401 certification for the YRDP. The State Board petitioned FERC for rehearing and issued its Certification before FERC acted on the petition, but FERC declined to set aside its waiver order. The State Board has challenged FERC's waiver order in the U.S. Court of Appeals for the Ninth Circuit. Unless the Ninth Circuit overturns FERC's order, the State Board's Certification will have no legal effect. Nevertheless, YCWA brought this lawsuit to challenge the State Board's Certification and, at the same time, also brought a nearly identical lawsuit in California state court.

This Court should dismiss Plaintiff's Complaint as premature and non-justiciable. Because the State Board has since amended its Certification and is currently entertaining petitions for reconsideration, and because the Certification has no legal effect until and unless the Ninth Circuit overturns FERC's waiver order, YCWA's claims are not ripe for review. For the

1

same reasons, YCWA has suffered no injury-in-fact sufficient to establish Article III standing. Even if the Certification had legal effect, YCWA is a political subdivision of the State and therefore lacks Article III standing to bring its constitutional due process claims. This Court also lacks jurisdiction over YCWA's claims because the State Board, its board members E. Joaquin Esquivel, Dorene D'Adamo, Tam M. Doduc, Sean Maguire, and Laurel Firestone, and its Executive Director Eileen Sobeck (collectively, "State Defendants") all have sovereign immunity. For each of these reasons, State Defendants respectfully request that this Court dismiss YCWA's action.

Even if this Court declines to dismiss the case, State Defendants respectfully request that the Court voluntarily transfer the case to the U.S. District Court for the Eastern District of California. That forum, Plaintiff's home district and where the YRDP is located, is more convenient for all parties, and a transfer would be in the interests of justice.

In the alternative, and at very least, this Court should stay this case pending resolution of the Ninth Circuit litigation and state court litigation. This court has inherent authority to stay the litigation, and should do so because the issues this Complaint raises may never need to be adjudicated depending on the outcome of the Ninth Circuit litigation. Even if the issues do need to be addressed at some point, the *Pullman* and *Colorado River* abstention doctrines counsel against this Court's consideration of YCWA's claims now given that they will be adjudicated at the proper time in state court where Plaintiff has filed a nearly identical complaint.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I.    THE YUBA RIVER DEVELOPMENT PROJECT

The YRDP is an approximately 362-megawatt hydroelectric project owned and operated by Plaintiff YCWA on the Yuba, North Yuba, and Middle Yuba Rivers and on Oregon Creek, in the Sacramento River Basin. Pl.'s Complaint ¶¶ 25–27, ECF No. 1. YCWA is a public agency of

the State of California created by a statute adopted by the California Legislature. Cal. Water

Code App. § 84-1. YCWA began operating the Project after obtaining a 50-year license from

FERC in 1963. Pl.'s Complaint ¶ 26. The Project includes three dams, two diversion tunnels, and

two powerhouses, whose operation has the potential to harm water quality by altering the rivers'

flow rates, temperature, and necessary floodplain inundation and spill reductions. *Id*. Exh. 2 at 6,

18. The rivers dammed by the YRDP are habitat for threatened or endangered species such as

spring-run Chinook salmon. *Id.* at 18, 22.

Because YCWA's original 50-year license was nearing expiration, in 2014 YCWA

submitted an application to FERC for a new license that would allow operation of the Project for

another 50 years while incorporating a number of other changes to the Project. *Id*. ¶ 34 & Exh. 2

at 7.

## II. SECTION 401 CERTIFICATION PROCEDURES

To obtain a new license from FERC, YCWA was obligated to obtain from the State

Board a certification under section 401 of the Clean Water Act that the Project would comply

with state water quality standards and appropriate requirements of state law. *See* 33 U.S.C.

§ 1341; Cal. Water Code § 13160; Cal. Code Regs., tit. 23, § 3838(a). Specifically, the

certification must ensure compliance with the water quality standards set out in water quality

control plans adopted by California, which designate the beneficial uses of water that are to be

protected, water quality objectives, and an implementation program to achieve those objectives.

Cal. Water Code §§ 13050(j), 13240–13248. Where a project may result in flow reductions or

other adversely altered flows, the State Board may include certification conditions necessary to

ensure compliance with the water quality standards. *PUD No. 1 of Jefferson Cty. v. Washington

Dep't of Ecology*, 511 U.S. 700, 713–21 (1994). Those conditions are then incorporated as

mandatory conditions of any new FERC license for a given project. 33 U.S.C. § 1341(d).

The Section 401 certification process for hydroelectric projects can be lengthy. Section 401 provides that its certification requirements are waived if a state does not act on a request for certification "within a reasonable period of time (which shall not exceed one year) after receipt." 33 U.S.C. § 1341(a)(1). Because it often requires multiple years for an applicant to compile a complete application and for the state to conduct necessary analyses, historically applicants have withdrawn applications and resubmitted updated applications to restart the state's one-year clock and avoid having the state deny the certification application for lack of adequate information to demonstrate the project would protect water quality.

This process of withdrawing and resubmitting an application has come under scrutiny recently. In *Hoopa Valley Tribe v. FERC*, 913 F.3d 1099 (D.C. Cir. 2019), the District of Columbia Circuit considered whether a state had waived its certification authority where, pursuant to written contract with state entities, and for over a decade, an applicant had annually submitted a letter to the state indicating that it was withdrawing and resubmitting an identical certification application, in anticipation that the project would ultimately be decommissioned. *Id.* at 1101–02. Based on the unique circumstances of the case, the court concluded that the state had waived its certification authority. *Id.* at 1105.

Under California law, once the State Board issues a certification, an interested party may petition for reconsideration within 30 days. Cal. Water Code § 13330(a). The State Board then has 90 days to grant or deny the petition, at which point the State Board does not lose authority to act on the petition but an aggrieved party may file suit in state court. *Id.*, § 13330(a), (b); *see generally California Correctional Peace Officers Ass'n v. State Personnel Bd.*, 10 Cal.4th 1133, 1147–48, 1150–51 (1995) (discussing effect of agency's failure to act on a petition for reconsideration before a statutory deadline).

### III.    YCWA'S APPLICATION FOR SECTION 401 CERTIFICATION

YCWA applied for a Section 401 water quality certification with the State Board on August 24, 2017. Pl.'s Complaint ¶ 39. Because its application materials were not complete within the statutory one-year timeline for state certification processes, YCWA withdrew its original application and resubmitted an updated one on August 3, 2018. *Id.* ¶¶ 41–43. On July 31, 2019, the State Board denied YCWA's application without prejudice, *id.* ¶ 45, in part due to YCWA's failure to initiate the environmental analysis required under the California Environmental Quality Act. *See* Pl.'s Complaint Exh. 1; *see also* Cal. Code Regs., tit. 23, § 3837(b).

Rather than resubmit its application, on August 22, 2019, YCWA filed a petition with FERC, citing *Hoopa Valley Tribe* and alleging that the State Board had waived its certification authority by not acting on the application within one year of the initial application filing date. Pl.'s Complaint ¶ 47 & Exh. 2 at 11. FERC granted YCWA's petition on May 21, 2020. *Id.* ¶ 48. On June 20, 2020, the State Board submitted a request for rehearing, which FERC subsequently denied on July 21, 2020. *Id.* ¶¶ 49–50 & Exh. 2 at 11.

In the meantime, the State Board issued a Section 401 Certification for YRDP on July 17, 2020, based on a draft of the Certification the Board had attached to its FERC rehearing request. Pl.'s Complaint ¶¶ 49, 57 & Exh. 2. The Certification was based on, and included, a finding that, with certain delineated conditions and limitations imposed, the YRDP would "comply with applicable state water quality standards and other appropriate requirements of state law." *Id.* Exh. 2 at 26.

Condition 23 of the Certification stated that the Certification would become effective upon the earliest of: a grant of rehearing of FERC's May 2020 order finding waiver of the State Board's certification authority, issuance of a judicial order overturning that order, or issuance of

another action finding that FERC improperly found waiver of the State Board's certification authority. Pl.'s Complaint Exh. 2 at 56. "Unless and until such action overturning FERC's finding of waiver, this certification shall not be considered a final action for the purposes of Water Code section 13160 regarding reconsideration or for administrative review." *Id.* The State Board explained that it intended to avoid "unnecessary use of scarce public resources in potentially revisiting, revising, or litigating certification terms that would not become effective absent a decision finding that the Board retained certification authority in the FERC YRDP proceeding." State Board, *Order Adopting Limited Amendments to Enable Proceeding on Reconsideration*, Order WQ 2020-0043 (Dec. 15, 2020), attached hereto as Exhibit A, at 4–5.[2]

## IV.   THE STATE BOARD'S ADMINISTRATIVE RECONSIDERATION PROCESSES

Despite the Certification's effectiveness being contingent on the reversal of FERC's order, YCWA submitted a petition for reconsideration of the State Board's Certification on August 14, 2020. Pl.'s Complaint ¶ 64. While the State Board considered this petition "premature," Exh. A at 5, it determined that the best solution was to amend Condition 23 of its Certification to allow submission of any new petitions for reconsideration or amendment of YCWA's petition, if desired. *Id.*

---

[2] Pursuant to Federal Rule of Evidence 201, State Defendants request that this Court take judicial notice of the State Board's December 15, 2020 Order, attached as Exhibit A, and also available at https://www.waterboards.ca.gov/board_decisions/adopted_orders/water_quality/2020/wqo2020_0043.pdf. This Court may take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). For instance, "judicial notice may be taken of public records and government documents available from reliable sources." *Johnson v. Comm'n on Presidential Debates*, 202 F.Supp.3d 159, 167 (D.D.C. 2016); *see also Joseph v. U.S. Civil Serv. Comm'n*, 554 F.2d 1140, 1147 & n.12 (D.C. Cir. 1977) (taking judicial notice of facts that are "matters of public record which could be unquestionably demonstrated from easily accessible sources of indisputable accuracy").

Therefore, on November 18, 2020, the State Board issued a notice of its own proposed limited amendment to Condition 23, which would permit petitions for reconsideration under state regulations, Cal. Code Regs., tit. 23, § 3867, and for reconsideration on the merits to proceed. The State Board adopted this amendment at its December 15, 2020 board meeting. Exh. A at 7–8.

As amended, Condition 23 continues to clarify that the Certification's requirements do not become effective as conditions required to be included in the FERC license unless and until FERC's waiver determination is set aside, and that these requirements "are not binding on or enforceable against [YCWA] except to the extent they are incorporated into a FERC license." Exh. A at 8. It also provides that petitions for reconsideration were due by January 14, 2021. *Id.* The State Board received four petitions, including YCWA's initial reconsideration petition and a supplement thereto.[3] The State Board is currently preparing notice of the petitions for comment and compiling the administrative record for distribution to parties to the reconsideration. *See* Cal. Code Regs., tit. 23, § 3867.1. After receiving comments received from interested persons, the State Board will act on the petitions. *See id.* § 3869.

## V.     YCWA'S JUDICIAL CHALLENGES TO THE CERTIFICATION AND RELATED LITIGATION

Multiple lawsuits have followed from both the FERC waiver order and the State Board's Certification. Of relevance here, the State Board petitioned for review of FERC's waiver order and denial of rehearing in the U.S. Court of Appeals for the Ninth Circuit. *Cal. State Water Res. Control Bd. v. FERC*, No. 20-72782 (9th Cir. filed Sept. 17, 2020). The Ninth Circuit granted

---

[3] *See* State Water Resources Control Board, Federal Energy Regulatory Commission (FERC) Project No. 2246, https://www.waterboards.ca.gov/waterrights/water_issues/programs/water_quality_cert/yubariver_ferc2246.html.

YCWA's motion to intervene. *Id.*, Dkt. #10. That ongoing litigation directly addresses whether California properly exercised or waived its Section 401 certification authority with respect to the YRDP, and therefore would impact the other proceedings. The parties to the Ninth Circuit litigation are engaged in mediation, and the State Board's opening brief is currently due April 16, 2021.

In addition, YCWA filed this lawsuit and a nearly identical California state court lawsuit on November 13, 2020, challenging the State Board's July 17, 2020 Certification. *See* YCWA Petition for Writ of Mandate, Case No. 20-CECG-03342 (filed in Sup. Ct. of Fresno, Cal., Nov. 13, 2020), attached hereto as Exhibit B.[4] YCWA alleges that this Court has federal question jurisdiction over its claims that Defendant Sobeck violated Section 401 of the Clean Water Act and the Supremacy Clause and the Fourteenth Amendment to the U.S. Constitution. Pl.'s Complaint ¶ 10. YCWA also alleges that this Court has supplemental jurisdiction, 28 U.S.C. § 1367, over its multiple state law claims. Pl.'s Complaint ¶ 11. YCWA seeks injunctive and declaratory relief. In its California state court case, YCWA makes all of the same claims and seeks the same relief. *Compare* Pl.'s Complaint *with* Exh. B.

## ARGUMENT

This Court lacks subject matter jurisdiction to review the State Board's Section 401 Certification. First, Plaintiff's claims are not ripe for review, and YCWA has suffered no injury-

---

[4] Pursuant to Federal Rule of Evidence 201, State Defendants request that this Court take judicial notice of YCWA's state court Petition for Writ of Mandate, attached as Exhibit B. This Court may take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). For instance, "[i]t is settled law that the court may take judicial notice of other cases including the same subject matter or questions of a related nature between the same parties." *Fletcher v. Evening Star Newspaper Co.*, 133 F.2d 395, 395 (D.C. Cir. 1942); *see also Hurd v. D.C., Gov't*, 864 F.3d 671, 686 (D.C. Cir. 2017) ("This court has for various purposes taken judicial notice of court records from other cases.").

in-fact sufficient to establish Article III standing. Even if YCWA could demonstrate an injury-in-fact for most of its claims, YCWA is a political subdivision of the State and therefore lacks Article III standing to bring its constitutional due process claims. In addition, this Court also lacks jurisdiction over YCWA's claims because State Defendants all have sovereign immunity.

Should this Court find that it has jurisdiction, it should exercise its inherent authority to voluntarily transfer the case to the Eastern District of California, which is more convenient for all parties and in the interests of justice. Barring dismissal or transfer, this Court may and should use its inherent authority to stay this case, given that, depending on the Ninth Circuit litigation, Plaintiff's claims may never need to be adjudicated. In addition, the *Pullman* and *Colorado River* doctrines counsel against this Court hearing this case now, since Plaintiff has raised the same or similar claims in parallel state court litigation. At very least, therefore, this Court should stay this case pending resolution of the Ninth Circuit and state court litigation.

## I.     THIS COURT LACKS JURISDICTION TO HEAR YCWA'S CLAIMS

This Court should dismiss YCWA's Complaint for lack of jurisdiction because YCWA's claims are premature, YCWA lacks standing, and State Defendants have Eleventh Amendment sovereign immunity. The "issue of ripeness falls under Rule 12(b)(1)," *Sierra Club v. U.S. Dep't of Energy*, 825 F.Supp.2d 142, 154 (D.D.C. 2011), and the "defect of standing is a defect in subject matter jurisdiction," *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). Similarly, the defense of sovereign immunity relates to a federal court's jurisdiction and is therefore "properly evaluated under Rule 12(b)(1)," *XP Vehicles, Inc. v. Dep't of Energy*, 118 F.Supp.3d 38, 56 (D.D.C. 2015).

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), "the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." *Id.* (quoting *Moran v. U.S. Capitol Police Bd.*, 820 F.Supp.2d 48, 53 (D.D.C. 2011)). Where subject

matter jurisdiction does not exist, "the court cannot proceed at all in any cause." *Steel Co. v. Citizens for a Better Envt.*, 523 U.S. 83, 94 (1998) ("jurisdiction [must] be established as a threshold matter"). "The court may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case." *XP Vehicles*, 118 F.Supp.3d at 56 (internal quotation marks and citation omitted). Further, "the court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff . . . but it need not accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations." *Id.* (internal quotation marks omitted).

### A.    YCWA's Lawsuit Must be Dismissed Because Its Claims Are Not Ripe

Plaintiff's claims are premature. In assessing the ripeness of a case, courts must evaluate "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)). The basic rationale of the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n*, 461 U.S. 190, 200 (1983) (quoting *Abbott Labs*, 387 U.S. at 148–49). In short, the ripeness doctrine ensures that Article III courts "make decisions only when they have to, and then, only once." *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 387 (D.C. Cir. 2012).

"The fitness requirement is primarily meant to protect the agency's interest in crystallizing its policy before that policy is subjected to judicial review and the court's interest in avoiding unnecessary adjudication and in deciding issues in a concrete setting." *Id.* (internal

quotation marks and citation omitted). "Courts decline to review 'tentative' agency positions because," among other consequences, "the integrity of the administrative process is threatened by piecemeal review of the substantive underpinnings of a rule, and judicial economy is disserved because judicial review might prove unnecessary if persons seeking such review are able to convince the agency to alter a tentative position." *Id.* (citation omitted).

### 1.    YCWA's Claims Are Not Fit For Review

"The fitness of an issue for judicial decision depends on whether it is purely legal, whether consideration of the issue would benefit from a more concrete setting, and whether the agency's action is sufficiently final." *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 417 F.3d 1272, 1281 (D.C. Cir. 2005) (internal quotation marks omitted). "Although both the fitness and hardship prongs encompass a number of considerations, a dispute is not ripe if it is not fit . . . and . . . it is not fit if it does not involve final agency action." *Holistic Candlers & Consumers Ass'n v. FDA*, 664 F.3d 940, 943 n.4 (D.C. Cir. 2012) (citations omitted); *see NRDC v. EPA*, 643 F.3d 311, 319 (D.C. Cir. 2011) (finality is "a necessary feature of fitness for review"). An agency action is final if it both marks "the consummation of the agency's decisionmaking process" and is a decision by which "rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal quotation marks and citations omitted); *see XP Vehicles*, 118 F.Supp.3d at 60 n.8 (explaining that courts have adopted the *Bennett* finality test as applicable to the fitness prong of the ripeness analysis).

When the effects of an agency decision may never be felt by the challenging parties in a concrete way, the D.C. Circuit has concluded that the "prospect of entangling ourselves in a challenge to such a decision is an element of the fitness determination as well." *Devia v. Nuclear Regulatory Comm'n*, 492 F.3d 421, 424 (D.C. Cir. 2007).

11

Here, YCWA's claims fail to satisfy the finality prong of the fitness test because the challenged Certification has been amended, is subject to reconsideration, and has no legal effect unless the Ninth Circuit vacates FERC's waiver order.[5]

As a preliminary matter, the July 2020 version of the State Board's Certification that YCWA challenges was expressly not "final action" and has since been amended. Indeed, the Certification stated that unless and until FERC's waiver order is overturned, "this certification shall not be considered a final action . . . ." Pl.'s Complaint Exh. 2 at 56. The State Board later elaborated on this, noting that the Certification terms "would not become effective absent a decision finding that the Board retained certification authority in the FERC YRDP proceeding." Exh. A at 5. While not determinative on its own, "the agency's characterization of the [action]" is relevant to determining whether it creates legal consequences and is final. *Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 252 (D.C. Cir. 2014) (relying on EPA's characterization of its guidance document that "repeatedly state[d] that it does not impose legally binding requirements" to hold that the document was not final action). Here, the State Board's language illustrates that the July 2020 Certification is not final action. Moreover, just five months after issuing the July 2020 Certification that YCWA challenges, the State Board noticed and approved an amendment, specifically to permit petitions for administrative reconsideration. *See* Exh. A at 7–8. Thus, the July 2020 Certification does not reflect the State Board's final word or mark the consummation of the agency's decisionmaking process.[6] *See City of Dania Beach, Fla. v. FAA,*

---

[5] Because the Certification does not meet the finality prong of the fitness test, State Defendants need not address the remaining prongs.

[6] Arguably, because the State Board's July 2020 Certification has since been amended, YCWA's challenge improperly seeks an advisory opinion regarding an interlocutory action. To the extent this Court might otherwise have jurisdiction over any of YCWA's claims, Plaintiff should amend or supplement their Complaint pursuant to Fed. R. Civ. Proc. 15 to reflect the amended Certification.

485 F.3d 1181, 1188 (D.C. Cir. 2007) (finding an action final because it was not "tentative, open

to further consideration, or conditional on future agency action"); *Ciba–Geigy Corp. v. EPA,* 801

F.2d 430, 436 (D.C. Cir. 1986) (to be final, the agency action must state an "unequivocal

position").

Second, the State Board's Certification is not final because it is subject to an ongoing

reconsideration process, which makes YCWA's claims not ripe for review. YCWA initially

submitted a petition for reconsideration of the July 2020 Certification, which the Board

considered "premature" because the Certification had no legal effect. Exh. A at 5. Nevertheless,

the Board decided to permit requests for reconsideration, by YCWA and others, if submitted by

January 14, 2021, and ultimately received four requests, including YCWA's original petition and

its supplement thereto.[7] When a litigant requests administrative reconsideration, it must wait for

the agency to act before being permitted to file or maintain a suit. *See Clifton Power Corp. v.

FERC*, 294 F.3d 108, 110 (D.C. Cir. 2002); *Wade v. FCC*, 986 F.2d 1433, 1433–34 (D.C. Cir.

1993). Otherwise, it would be "a pointless waste of judicial energy for the court to process any

[challenge] before the agency has acted on the request for reconsideration." *Melcher v. FCC*, 134

F.3d 1143, 1163 (D.C. Cir. 1998) (internal quotation marks omitted). Because the Board is

currently entertaining YCWA's reconsideration requests and two others, YCWA's lawsuit is

incurably premature.[8]

---

[7] *See* State Water Resources Control Board, Federal Energy Regulatory Commission
(FERC) Project No. 2246,
https://www.waterboards.ca.gov/waterrights/water_issues/programs/water_quality_cert/yubariver_ferc2246.html.

[8] This is true even though YCWA may file suit in state court if, after 90 days, the State
Board has not taken final action on YCWA's petition for administrative reconsideration. *See* Cal.
Water Code § 13330(a), (b). When that occurs, the State Board retains jurisdiction over the
petition to the extent that it has not taken final action on it. *Id.*; *see generally California
Correctional Peace Officers Ass'n v. State Personnel Bd.*, 10 Cal.4th 1133, 1147–48, 1150–51

Third, the State Board's amended Certification does not determine any legal rights or create legal consequences because it has no legal effect unless and until the Ninth Circuit vacates FERC's waiver order. The State Board has acknowledged as much both in its July 2020 Certification and in its amended Certification. Pl.'s Complaint Exh. 2 at 56 ("Unless and until such action overturning FERC's finding of waiver, this certification shall not be considered a final action . . . ."); *id.* at 16 ("Issuance of this certification will become effective only if the FERC order is overturned."); Exh. A at 5 ("certification terms that would not become effective absent a decision finding that the Board retained certification authority in the FERC YRDP proceeding"); *id.* at 8 (maintaining that the Certification's requirements do not become effective as conditions required to be included in the FERC license unless and until FERC's waiver order is set aside, and stating that the requirements "are not binding on or enforceable against [YCWA] except to the extent they are incorporated into a FERC license"). FERC's order found that the State Board had waived its authority to issue a certification for the YRDP. Pl.'s Complaint ¶¶ 48, 50. The State Board has petitioned the Ninth Circuit for review of that waiver order. *Id.* ¶ 51; *Cal. State Water Res. Control Bd. v. FERC*, No. 20-72782 (9th Cir. filed Sept. 17, 2020). The Ninth Circuit will determine whether FERC's waiver order was lawful and whether the State Board has waived its certification authority. Unless and until that court concludes that FERC's waiver order was unlawful and vacates it, FERC's waiver order precludes the State Board's Certification from having legal effect and binding YCWA or any other entities. Consequently, the State Board's Certification has neither "announce[d] a binding change in the law," *see*

(1995) (discussing effect of agency's failure to act on a petition for reconsideration before a statutory deadline). This ability to file in state court does not apply to federal court litigation, where an action is not ripe for review if an agency is entertaining a petition for administrative reconsideration. *See, e.g.*, *Clifton Power Corp.*, 294 F.3d at 110; *Wade*, 986 F.2d at 1433–34.

*NRDC*, 643 F.3d at 319, nor "compel[led regulated parties] to do anything," *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 732 (D.C. Cir. 2003). *See also Devia*, 492 F.3d at 424 (declining to find an action ripe for review where its effects might never be felt by the parties in a concrete way). Because the State Board's Certification is not sufficiently final, YCWA's claims are not fit for review and the lawsuit must be dismissed.

### 2. YCWA Will Suffer No Hardship from Deferred Judicial Review

YCWA has also "failed to demonstrate that deferring judicial review will result in real hardship." *Nat'l Park Hospitality*, 538 U.S. at 811–12. Plaintiff alleges that it "potentially" will face increasing expenses and decreasing revenues if the Certification becomes effective and its conditions are imposed. Pl.'s Complaint ¶ 17. But that contingency is far from certain, and YCWA has not even suggested that it faces any harms now or in the foreseeable future unless or until the State Board's Certification becomes effective. And even then, YCWA has not indicated that it would suffer any harm until or unless the conditions were actually incorporated into FERC's license, or, for the majority of the "potential" injuries, until or unless the State Board subsequently decides to reopen its Certification and, following notice and comment, impose significant changes to the facilities and to instream flow requirements. Nor has YCWA alleged that it must act now to avoid those speculative, future risks. Thus, YCWA has not presented any evidence to demonstrate hardship from deferring judicial review until the Ninth Circuit vacates FERC's waiver order and the State Board's Certification becomes effective.

Because YCWA has not met either prong of the ripeness test, this Court should dismiss this lawsuit for lack of ripeness.

## B.    YCWA Lacks Article III Standing

YCWA also lacks standing to bring any of its claims.[9] "The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Lujan v. Defenders of Wildlife Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). The Supreme Court in explained the "irreducible constitutional minimum" that a petitioner seeking to invoke a federal court's jurisdiction must establish. 504 U.S. 555, 560–61 (1992). A petitioner must show (1) an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) that their injury is fairly traceable to the challenged action of the defendant; and (3) that it is "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Id.* (citations and internal quotation marks omitted). For purposes of the injury-in-fact requirement, "allegations of possible future injury are not sufficient." *Clapper*, 568 U.S. at 409 (internal quotation marks and citation omitted). Likewise, "predictions of future events" are "too speculative to support a claim of standing." *Turlock Irr. Dist. v. FERC*, 786 F.3d 18, 25 (D.C. Cir. 2015).

### 1.    YCWA Has Suffered No Injury-In-Fact Sufficient to Confer Article III Standing

Here, YCWA has not suffered any injury-in-fact. YCWA alleges that the conditions in the State Board's Certification "have the potential to cost YCWA at least $500 million" *if imposed*, that the Certification "attempts to compel YCWA to shoulder primary responsibility for improving fisheries habitat in the lower Yuba River," and that the Certification presents a financial risk by "potentially increasing YCWA's annual expenses and decreasing" its revenues.

---

[9] The standing inquiry is the same for all of YCWA's claims regardless of whether they are based in federal or state law. "[S]tanding in federal court is a question of federal law, not state law." *Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013).

Pl.'s Complaint ¶ 17. Notably, YCWA couches each of its injuries in noncommittal language like "potentially." As it must. Each of these alleged injuries depends on the enforceability of the State Board's Certification and the conditions therein, and the gravamen of the alleged injuries depends on assumptions about the State Board's future exercise of its authority to reopen and alter the Certification's conditions. As explained above, until and unless the Ninth Circuit vacates FERC's waiver order, the State Board's Certification has no legal effect. *Supra* Arg. § I.A. There is no guarantee that will happen. Where an injury has not occurred and may never occur unless another court reverses an order of an Article II agency, the alleged injury is hypothetical and speculative. *See Clapper*, 568 U.S. at 409; *see also Cierco v. Mnuchin*, 857 F.3d 407, 414 (D.C. Cir. 2017) ("[A] federal court may not render advisory opinions or decide questions that do not affect the rights of parties properly before it." (internal quotation marks and citation omitted)). And even if the Ninth Circuit vacates FERC's waiver order, the conditions in the State Board's Certification could change during the Board's reconsideration process and, in any event, will not be enforceable against YCWA until FERC incorporates them into a new license for the YRDP.

To the extent that YCWA alleges procedural injuries from the State Board's Certification process, those injuries are also insufficient to confer standing. *See* Pl.'s Complaint ¶ 3. A "bare procedural violation, divorced from any concrete harm," does not satisfy Article III. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1549 (2016). Thus, the Supreme Court has held that "deprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing," even if "accorded by Congress." *Summers v. Earth Island Institute,* 555 U.S. 488, 490, 496–97 (2009). Here, where there has not been and may never be any concrete harm, YCWA may not rely on any procedural injuries.

Because YCWA has suffered no injury from the State Board's issuance of its Certification, it cannot satisfy the causation and redressability prongs of the Article III standing analysis. The State Board's Certification has not *caused* any cognizable injury. Therefore, there is nothing to be *redressed* by vacating the Certification. YCWA has not met its burden to demonstrate standing.

> **2.     Even if YCWA Could Otherwise Demonstrate Standing, It Is A Political Subdivision of the State and Therefore Lacks Standing to Bring its Constitutional Due Process Claims**

YCWA also lacks standing to bring its constitutional due process claims because it is a "public agency specifically created by the State of California." Pl.'s Complaint ¶ 14. The Supreme Court has held that such a state-created unit of government "has no privileges or immunities under the Federal Constitution which it may invoke in opposition to the will of its creator." *Williams v. Mayor of Baltimore*, 289 U.S. 36, 40 (1933); *see City of Trenton v. New Jersey*, 262 U.S. 182, 188 (1923); *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 362 (2009). All circuits to have addressed the issue have interpreted *Williams* to preclude political subdivisions of the state from bringing Fourteenth Amendment due process claims on their behalf. *See, e.g.*, *City of San Juan Capistrano v. California Public Utilities Comm'n*, 937 F.3d 1278, 1280–81 (9th Cir. 2019) (acknowledging a circuit split in how to treat the bar and whether it extended to all constitutional claims, but reaffirming the Ninth Circuit's per se rule "that political subdivisions lack standing to challenge state [action] on constitutional grounds in federal court").[10]

---

[10] Some circuits have framed this as a failure to state a claim rather than a jurisdictional lack of standing, because the political subdivision of the state has no due process rights of its own that the state could violate. *See, e.g.*, *S. Macomb Disposal Auth. v. Township of Washington*, 790 F.2d 500, 503–05 (6th Cir. 1986); *Rogers v. Brockette*, 588 F.2d 1057, 1067–70 (5th Cir.

YCWA's enabling statute describes the agency as a "body politic" with "the powers enumerated in this act and such other powers as the law may provide." Cal. Water Code App. § 84-3; 1959 Cal. Stat. ch. 788, pp. 2780–81. Consequently, YCWA lacks due process rights that it may assert in opposition to the will of the State. Constitutional rights are intended to limit governmental action vis-à-vis individual citizens, not State governmental action vis-à-vis agencies created by the State. Therefore, whether treated as a lack of standing or a failure to state a claim, YCWA's due process claims are barred.

### C.    Eleventh Amendment Immunity Bars Plaintiff's Suit

Plaintiff's suit against State Defendants is barred by Eleventh Amendment immunity. States, state agencies, and state officials acting in their official capacity are generally immune from suit in federal court by virtue of the Eleventh Amendment to the United States Constitution. U.S. Const., amend. XI; *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984) (immunity from suit applies regardless of whether "the State or one of its agencies or departments is named as the defendant"); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70–71 (1989) ("a suit against a state official in his or her official capacity. . . is no different from a suit against the State itself"). Because none of the exceptions to the general immunity protections of the Eleventh Amendment is applicable to the present case, Plaintiff's Complaint must be dismissed.

---

1979). And some circuits have limited the bar to due process violations rather than extend it to other constitutional claims. *See Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 72–73 (2d Cir. 2019) (distinguishing Fourteenth Amendment concerns in *Williams* from those presented by the Supremacy Clause).

1.     **State Defendants' Eleventh Amendment Immunity Has Not Been Abrogated By Congress Nor Has It Been Waived For Any of Plaintiff's Claims**

A state may waive its Eleventh Amendment immunity through a statutory or constitutional provision, but such a waiver must expressly and unequivocally "specify the State's intention to subject itself to suit in federal court." *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 241 (1985). Alternatively, Congress may abrogate Eleventh Amendment immunity as to actions against a state arising under a specific federal statute. Such an act of abrogation, however, must be expressed in "unmistakable language in the statute itself." *Id*. at 243. Furthermore, the Supreme Court has narrowed Congress' abrogation power by holding that congressional abrogation of Eleventh Amendment immunity can only occur where the constitutional authority for the congressional action is based upon the Fourteenth Amendment to the U.S. Constitution. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 65 (1996).

Here, there is no specific state law that waives State Defendants' Eleventh Amendment immunity in federal court. And to the extent YCWA contends the State Board waived its immunity by participating in Section 401 or receiving funds from the U.S. Environmental Protection Agency under the Clean Water Act, there is no authority to support that contention. *Atascadero State Hospital*, 473 U.S. at 246–47. There is also no unmistakable language in the Clean Water Act or the Federal Power Act[11] that abrogates State Defendants' immunity. Nor could there be, because neither statute was adopted or amended pursuant to the Fourteenth

___

[11] Unlike the Federal Power Act, the Natural Gas Act specifically authorizes direct judicial review in federal court of a state's decision under Section 401 relating to natural gas lines. 15 U.S.C. § 717r(d)(1). As a result, there is limited case law suggesting waiver of immunity in that context. *See, e.g.*, *Islander East Pipeline Co., LLC, v. State of Connecticut Dep't of Envtl. Prot.*, 482 F.3d 79, 90 (2d Cir. 2006); *also Delaware Riverkeeper Network v. Sec'y Pennsylvania Dep't of Envtl. Prot.*, 833 F.3d 360, 376–77 (3d Cir. 2016).

Amendment. Similarly, Congress has not otherwise abrogated California's sovereign immunity as to any of the claims brought under California state law. As a result, the Eleventh Amendment requires dismissal of this lawsuit.

### 2. The *Ex Parte Young* Exception Does Not Apply to YCWA's Claims

#### a. The *Ex parte Young* exception does not apply to Plaintiff's state law claims

None of YCWA's state law claims is permissible under the limited exception to Eleventh Amendment immunity the Supreme Court recognized in *Ex parte Young*, 209 U.S. 123 (1908). Under the *Ex parte Young* exception, state officials may be sued in their official capacities for prospective or injunctive relief to prevent an ongoing or imminent violation of *federal law*. *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 269 (1997). Claims alleging violations of *state law* may not be asserted in federal court against state agencies or state officials. *Pennhurst*, 465 U.S. at 106, 124–25 (federal courts lack jurisdiction to enjoin state institutions and state officials on the basis of state law).

In its Complaint, YCWA named the State Board, State Board members in their official capacities, and State Board executive director in her official capacity and brought eight claims— counts 5 through 12—based on allegations that State Defendants violated state law. Because the *Ex parte Young* exception does not apply to these state law-based claims, they are barred by the Eleventh Amendment and must be dismissed. *See Pennhurst*, 465 U.S. at 106, 124–25.

#### b. The *Ex parte Young* exception does not apply to Plaintiff's federal law claims

YCWA's federal law laims against Defendant Sobeck—counts 1 through 4—also fall outside of the *Ex parte Young* exception. The *Ex parte Young* exception only allows federal suits against state officials "who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal

Constitution." *Ex parte Young*, 209 U.S. at 156. Under *Ex parte Young*, the prospect of

enforcement of the alleged unconstitutional act by the state official must be "imminent," for it is

the prospect of that imminent enforcement that supplies the requisite threat of irreparable injury

warranting equitable relief. *Morales v. Trans World Airlines, Inc*., 504 U.S. 374, 382–83 (1992).

"Any other rule (assuming it would meet Article III case-or-controversy requirements) would

require federal courts to determine the constitutionality of state laws in hypothetical situations

where it is not even clear the State itself would consider its law applicable." *Id*. at 382.

Defendant Sobeck has neither attempted to enforce, threatened to enforce, nor is about to

"commence proceedings" to enforce the Section 401 Certification against Plaintiff. By its

express terms, the Section 401 Certification will not become effective, and Defendant Sobeck, as

the State Board Executive Director, could not attempt to enforce it, unless and until FERC's

order finding the State Board had waived its Section 401 certification authority is set aside and

FERC incorporates the Certification into Plaintiff's license. Pl.'s Complaint Exh. 2 at 16, 56;

Exh. A at 5, 8. Neither of these actions is imminent. To date, FERC has refused to rescind its

waiver order, the Ninth Circuit has not ordered FERC to do so (nor has the State Board even

filed its opening brief), and it is unknown when, if ever, FERC will issue Plaintiff a license that

incorporates the Section 401 Certification.

Meanwhile, YCWA continues to avail itself of the Section 401 certification review

processes it has already initiated and to which State Defendants have not claimed immunity,

namely the reconsideration proceedings in front of the State Board and the lawsuit YCWA filed

in California state court. Without the need for resolution at the speed only the federal courts can

provide, these pending state proceedings provide a sufficient forum to hear Plaintiff's claims,

and the *Ex parte Young* exception is inapplicable. *See Idaho*, 521 U.S. at 269.

Because the Section 401 Certification is not yet effective and there is no imminent threat of its enforcement, the *Ex parte Young* exception does not apply to Plaintiff's federal law claims. Accordingly, the Court has no subject matter jurisdiction to adjudicate these claims and they must be dismissed.

## II.   ANY REMAINING CLAIMS SHOULD BE TRANSFERRED TO THE EASTERN DISTRICT OF CALIFORNIA

If YCWA's Complaint is not dismissed in its entirety, the Court should exercise its broad discretion to transfer any remaining claims to the U.S. District Court for the Eastern District of California pursuant to 28 U.S.C. § 1404(a) as that forum is more convenient for the parties and in the interests of justice. YCWA and State Defendants both reside exclusively in the Eastern District of California, the water project at issue is located entirely within the Eastern District of California, resolution of this case is a matter of public interest to residents in the Eastern District of California who will be benefited and burdened by the project, and Plaintiff's claims arising under California law will be more familiar to judges in the Eastern District of California. Plaintiff's selection of this venue rests solely on the tenuous basis that FERC may take action in the future in the District of Columbia that will incorporate the State Board's Certification if the Ninth Circuit overturns FERC's order that the State Board waived its Section 401 authority. Pl.'s Complaint ¶ 13. Plaintiff's venue of choice should yield under these circumstances.

### A.   Standards for Discretionary Transfer

The court may transfer any case to a different district for the parties' convenience or in the interests of justice. 28 U.S.C. § 1404(a). "Motions to transfer are left to the discretion of the Court to adjudicate on an individualized, case-by-case consideration of convenience and fairness." *Shawnee Tribe v. U.S.*, 298 F.Supp.2d 21, 23 (D.D.C. 2002) (internal quotation marks omitted). The court is to first determine if venue would be proper in the transferee district. If it is,

23

the court then considers a number of private and public factors discussed below to determine whether to exercise its discretion to transfer the case.

### B.    Venue Would be Proper in the Eastern District of California

The threshold question under section 1404(a) is whether the action "might have been brought" in the transferee district. *Ngonga v. Sessions*, 318 F.Supp.3d 270, 274 (D.D.C. 2018). YCWA could have brought this lawsuit in the Eastern District of California for three reasons. First, State Defendants reside in the Eastern District of California. 28 U.S.C. § 1391(b); Cal. Water Code § 181 ("The [State Board] shall maintain its headquarters in Sacramento . . . ."). Second, a substantial part of the events giving rise to the claim occurred in Sacramento, as that is where the State Board issued the Section 401 Certification in question. *Id.* Third, the Section 401 Certification concerns YCWA's operation of the Project, which exists entirely within Yuba County, which is located entirely within the Eastern District of California. 28 U.S.C. § 1391(b); *see also* Cal. Water Code App. § 84-1, 1959 Cal. Stats. ch. 788, p. 2780 (designating Yuba County as the territory of YCWA). As such, the Eastern District of California would have been an appropriate venue to initiate this lawsuit.

### C.    The Balance of Private and Public Interests Favors Transfer

"Once the Court determines that venue would be proper in the proposed transferee district, it then 'uses its broad discretion to balance case-specific factors related to the public interest of justice and the private interests of the parties and witnesses.'" *Al-Ahmed v. Chertoff*, 564 F.Supp.2d 16, 19 (D.D.C. 2008) (quoting *Montgomery v. STG Int'l, Inc*., 532 F.Supp.2d 29, 32 (D.D.C. 2008)). "Private interest factors include: (1) each party's choice of forum; (2) where the claim arose; (3) the convenience of the parties; (4) the convenience of the witnesses, particularly if important witnesses may be unavailable to give live testimony in one of the trial districts; and (5) the ease of access to sources of proof." *Id.* "Public interest factors include (1)

24

the transferee court's familiarity with the applicable law; (2) the relative congestion of the calendars of the transferee and transferor courts; and (3) the local interest in deciding local controversies at home." *Id.* (citations omitted).

### 1.    Private factors favor transfer

Three of the five private factors favor transferring the case to the Eastern District of California, and the other two factors are neutral. First, the parties' choice of forum favors transfer. While a plaintiff's choice of forum is normally afforded deference, that choice is afforded "diminished consideration" when plaintiff's chosen forum "has no meaningful ties to the controversy and no particular interest in the parties or subject matter." *Islamic Republic of Iran v. Boeing Co.*, 477 F.Supp. 142, 144 (D.D.C. 1979). Furthermore, a plaintiff's choice of forum "is conferred less deference by the court when a plaintiff's choice of forum is not the plaintiff's home forum." *Shawnee Tribe*, 298 F.Supp.2d at 24. "Indeed, when the forum preferred by the plaintiff is not his home forum, and the defendant prefers the <u>plaintiff's</u> home forum, there is little reason to defer to the plaintiff's preference." *Ngonga*, 318 F.Supp.3d at 275 (citation and internal quotation marks omitted, underlining in original). Here, both YCWA and State Defendants are located within the Eastern District of California. YCWA's jurisdiction is limited to Yuba County, Cal. Water Code App. § 84-1, and it is headquartered in Yuba County's seat of Marysville, California,[12] which is 41 miles north of Sacramento. State Defendants are headquartered in Sacramento. Cal. Water Code § 181. State Defendants prefer that this case be litigated in YCWA's home forum, which is also its home forum.[13]

---

[12] Yuba Water Agency, About Us, https://www.yubawater.org/27/About-Us.

[13] YCWA's *counsel* is located in the District of Columbia, Pl.'s Complaint at p.42, but a particular venue's potential convenience to a party's counsel is not a consideration in a discretionary transfer of venue motion. *State v. U.S. Army Corps of Engineers*, 304 F.Supp.3d 56, 66 (D.D.C. 2018) ("[t]he location of counsel carries little, if any, weight in an analysis under

The second factor—where the claim arose—also favors transfer. YCWA challenges the State Board's issuance of the Section 401 Certification. That Certification was issued in Sacramento, California (within the Eastern District of California) for a water project located in Yuba County (also within the Eastern District of California). No portion of the actions at issue have yet occurred in the District of Columbia. The case's only arguable tie to the District of Columbia is that if FERC's waiver order is set aside and the Certification is upheld despite YCWA's lawsuits, FERC will have the ministerial obligation to incorporate the Section 401 Certification conditions into the FERC license (33 U.S.C. § 1341), and presumably will perform that ministerial act in the District of Columbia.

Third, the parties' convenience also favors transfer. Both YCWA and State Defendants reside exclusively in the Eastern District of California. Should either party seek to appear in or monitor court proceedings, it is more convenient to do so locally than appear across the country.[14]

The fourth factor, witness convenience, is neutral. That is because this case will presumably be tried without live witnesses, and thus neither forum will be more or less convenient for witnesses. Similarly, the fifth factor, ease of access to proof, is also neutral, as State Defendants assume the evidence will be submitted electronically in either forum.

## 2. Public factors favor transfer

The balance of public factors also weighs in favor of transfer. The first factor—the transferee court's familiarity with applicable law—supports transfer. YCWA's Complaint asserts

---

§ 1404(a)"). Regardless, Plaintiff has local counsel in California who filed a substantially similar lawsuit in California state court. *See* Exh.B.

[14] State Defendants recognize that currently most court proceedings are conducted remotely due to the COVID-19 pandemic but optimistically assume that mandatory remote appearances will cease before this case is brought to trial.

claims under both federal and California law. This court and the Eastern District of California are equally suited to decide issues of federal law. *Trout Unlimited*, 944 F.Supp. at 19; *State v. U.S. Army Corps of Engineers*, 304 F.Supp.3d at 68 ("all federal courts are presumed to be equally familiar with the law governing federal statutory claims"). Counts five through twelve in the Complaint assert violations of California law arising under the California Constitution, California Water Code, California Public Resources Code, California Government Code, California Code of Civil Procedure, and various California regulations. Pl.'s Complaint ¶¶ 143–97. Judges in the Eastern District of California will be more familiar with California law than judges in the District of Columbia. *Trout Unlimited*, 944 F.Supp. at 19; *Sallyport Global Services, Ltd. V. Arkel Int., LLC*, 78 F.Supp.3d 369, 375–76 (D.D.C. 2015).

The second public factor—relative congestion of caseloads—would appear to weigh against transferring, as Eastern District of California judges have a weighted average caseload of 698 cases per judgeship (which is just over the national average of 681), whereas District of Columbia judges have a weighted average caseload of 291 cases per judgeship.[15] However, this Court has held that even if the court congestion factor weighs in one direction, this factor on its own "does not outweigh all of the others." *Western Watersheds Project v. Jewell*, 69 F.Supp.3d 41, 44–45 (D.D.C. 2014) (transferring case despite transferee court appearing more congested).

The final factor—the local interest in deciding local controversies at home—weighs heavily in favor of transfer. "'[P]erhaps the most important factor' in the motion-to-transfer balancing test is the interest in having local controversies decided locally." *Mandan, Hidatsa and Arikara Nation v. U.S. Dep't of the Interior*, 358 F.Supp.3d 1, 6 (D.D.C. 2019) (quoting *Alaska*

---

[15] These statistics are as of September 2020, and were gathered from the US Courts website, Federal Court Management Statistics, September 2020, https://www.uscourts.gov/statistics-reports/federal-court-management-statistics-september-2020.

*Wilderness League v. Jewell*, 99 F.Supp.3d 112, 116 (D.D.C. 2015)). Controversies should be resolved in the locale where they arise. *Islamic Republic of Iran*, 477 F.Supp. at 144. The Court should defer to the compelling interest of State Defendants in having this localized controversy decided at home. *Trout Unlimited*, 944 F.Supp. at 19. "This policy rationale applies equally to the judicial review of an administrative decision which will be limited to the administrative record." *Id.*

The California Legislature emphasized the importance of local concerns in YCWA's enabling legislation. The Legislature made a finding supporting enactment of special legislation referring to "water problems in the County of Yuba," stating that "the solution of these problems lies within and is peculiar to the area to be included in the Yuba County Water Agency" and declaring enactment of a special law is required because "general law cannot be made applicable to said county." Cal. Water Code App. § 84-26, Ch. 788, 1959 Cal. Stats. 1, p. 2798.

In a similar lawsuit concerning the operation of a water storage facility in the arid west, this Court transferred the case to the District of Colorado, where the water project was located. As the Court said,

> Colorado . . . possesses a significant and predominant interest in this suit because of the impact that the resolution of this action will have upon the affected lands, waters, wildlife and people of that state. Moreover, Colorado has an overwhelming connection to the subject matter of this action. Long Draw Dam and Reservoir is located in Larimer County, Colorado. The waters of La Poudre Pass Creek and the Cache la Poudre River are located in Colorado. Other, very interested parties, such as Water Supply, the owner of Long Draw Dam and Reservoir and its shareholder-users, are located in Colorado. The Colorado Water Conservation Board is located in Colorado. The agricultural and municipal properties which depend upon the water stored in the Long Draw Reservoir are located in Colorado. Thus the affected public, the water users and residents of Cache la Poudre basin, are located in Colorado. Importantly, the people who are concerned about the easement's potentially negative impact upon wildlife are located in Colorado.

*Trout Unlimited*, 944 F.Supp. at 17. The same is true here. The allocation of water resources, the limits placed on that allocation to protect water quality, and the costs imposed on local communities to do so, is of significant interest to the residents of the Eastern District of California. *State v. U.S. Army Corps of Engineers*, 304 F.Supp.3d at 67. Perhaps no issue raises more significant local concerns in the arid west than the allocation of water resources and the associated environmental, social, and economic costs.

III.   **EVEN IF THIS COURT RETAINS JURISDICTION OVER THIS CASE, IT SHOULD BE STAYED**

Even if this Court has jurisdiction and declines to transfer this case, it should be stayed pending the Ninth Circuit and state court litigation.

A.   **This Court Should Use Its Inherent Authority to Stay the Case Pending the Ninth Circuit Litigation**

If the Court concludes that dismissal of this action is not warranted, the Court should stay the litigation of Plaintiff's remaining claims until the Ninth Circuit hears the State Board's petition for review challenging FERC's waiver order. "[P]arallel litigation of factually related cases in separate fora is inefficient" and should be avoided. *Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346, 349 (D.C. Cir. 2003). Thus, district courts have broad discretion to stay all proceedings in an action pending the resolution of independent legal proceedings. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Int'l Painters & Allied Trades Indus. Pension Fund v. Painting Co.*, 569 F.Supp.2d 113, 120 (D.D.C. 2008).

The authority to stay proceedings stems from "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Int'l Painters*, 569 F.Supp.2d at 120 (quoting *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6 (1998)) (internal quotation marks and citation omitted). "Indeed, '[a] trial court may, with propriety, find it is efficient for its own docket and the fairest course for

the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case.'" *Id.* (quoting *Leyva v. Certified Grocers of Cal., Ltd.* 593 F.2d 857, 863-64 (9th Cir. 1979)).

In considering a stay, courts must "weigh competing interests and maintain an even balance . . . between the court's interests in judicial economy and any possible hardship to the parties." *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 732–33 (D.C. Cir. 2012) (quoting *Landis*, 299 U.S. at 254–55) (internal quotation marks omitted). In other words, conservation of judicial resources and hardship to the parties are the key interests to consider in evaluating a motion for a stay. *See Hulley Enters. Ltd. v. Russian Fed'n*, 211 F.Supp.3d 269, 276 (D.D.C. 2016). Here, these interests warrant staying this litigation pending resolution of the State Board's petition for review in the Ninth Circuit.

First, the benefits to judicial economy weigh heavily in favor of a stay. The effectiveness of the Section 401 Certification Plaintiff challenges in this case is contingent on FERC's waiver order being set aside. The State Board has petitioned the Ninth Circuit to review FERC's waiver order. Should the Ninth Circuit uphold FERC's waiver order, the State Board's Certification would not become effective and there would be no need for YCWA to continue challenging the Certification. Thus, a stay of the current proceedings would conserve judicial resources that might never have to be expended.

Second, the balance of equities weighs in favor of staying this case. Because the Certification is not and will not become effective unless and until the Ninth Circuit vacates FERC's waiver order, there is not "even a fair possibility" that Plaintiff would suffer harm if this case is stayed. *See Landis*, 299 U.S. at 255. Indeed, even after the Ninth Circuit challenge concludes, YCWA would likely have substantial time to litigate any remaining claims prior to

FERC incorporating the Certification's conditions into YCWA's license. And even if Plaintiff argues in opposition that it would suffer from delaying this suit, any such harm would be outweighed by State Defendants having to unnecessarily expend limited State resources litigating issues that may never become ripe.[16] Therefore, the balance of equities weighs in favor of staying this litigation.

The potential gains in judicial economy by staying this lawsuit and the harm that unnecessarily proceeding with this action would inflict upon State Defendants outweigh the hardship, if any, to Plaintiff from staying this case. Accordingly, the Court should stay this lawsuit pending the resolution of the State Board's petition for review in the Ninth Circuit.

### B. This Court Should Stay this Case Pending the Outcome of the Identical State Court Litigation

#### 1. The *Pullman* Abstention Doctrine Counsels In Favor of a Stay Pending Resolution of the Identical State Court Litigation

Federal courts may abstain from deciding a case involving a state action if there are unsettled questions of state law that may be dispositive of, or narrow, the case thereby potentially avoiding the need to decide a constitutional question. *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 501 (1941). "*Pullman* allows postponement of the exercise of federal jurisdiction when 'a federal constitutional issue . . . might be mooted or presented in a different posture by a state court determination of pertinent state law.'" *Kollsman v. Los Angeles*, 737 F.2d 830, 833 (9th Cir. 1984) (citation omitted). *Pullman* defers to state court interpretations of state law, not

---

[16] YCWA could also offset any potential harm from a stay of this litigation by continuing to pursue its petition for administrative consideration and to litigate the California state court case it filed against State Defendants in which it asserts identical causes of action. Otherwise, if the Ninth Circuit rules in the State Board's favor, Plaintiff could request that this Court lift the stay and proceed with the case. *See Int'l Painters*, 569 F.Supp.2d at 120–21 (after finding equitable factors weighed against dismissal or transfer, staying action to allow parallel suit to be adjudicated).

only for comity, but also to avoid "premature constitutional adjudication" arising from "interpreting state law without the benefit of an authoritative construction by state courts." *Gilbertson v. Albright*, 381 F.3d 965, 970 n.6 (9th Cir. 2004) (en banc) (internal quotation marks omitted). The *Pullman* doctrine ultimately "rests on the desirability of having federal courts avoid unnecessary rulings on constitutional issues." *Rivera-Puig v. Garcia-Rosario*, 983 F.2d 311, 322 (1st Cir. 1992).

*Pullman* abstention is appropriate when three criteria are present: 1) a complaint that requires resolution of a sensitive question of federal constitutional law; 2) that question is susceptible to being mooted or narrowed by a definitive ruling on the state issues by a state court; and 3) the potentially determinative state law issue is difficult and unsettled or uncertain. *U.S. v. Morros*, 268 F.3d 695, 703–04 (9th Cir. 2001). Each of those criteria is present here.

First, YCWA's Complaint would require resolution of several sensitive questions of federal constitutional law: whether the State Board's Section 401 Certification conditions violate the Supremacy Clause as being in conflict with the Federal Power Act (FPA) (Pl.'s Complaint ¶¶ 119–26)[17]; whether the State Board's procedures for issuance of the Certification violated YCWA's procedural due process rights to notice, a hearing, and an opportunity to respond, and the Certification was adopted pursuant to unlawfully delegated authority (*id*. ¶¶ 127–35); and whether the State Board violated YCWA's substantive due process rights because the Section

---

[17] Some circuit courts have raised the question of whether preemption poses a sensitive constitutional question under *Pullman* on the basis that it is largely a question of "determining the compat[i]bility of a state and federal statutory scheme." *See Knudsen Corp. v. Nevada State Dairy Comm'n*, 676 F.2d 374, 377 (9th Cir. 1982); *Morros*, 268 F.3d at 704; *United Services Auto. Assn. v. Muir*, 792 F.2d 356, 363–64 (3d Cir. 1986). The Supreme Court has not definitively resolved this question, and the D.C. Circuit does not appear to have addressed it either. Regardless, the due process claims pose constitutional questions involving sensitive areas of social policy.

401 Certification conditions were not rationally related to a legitimate governmental interest (*id.* ¶¶ 136–42). Each of these claims involves sensitive issues related to the limits of a state's authority under the federal Constitution to take actions to protect the state's waters. *See Kollsman*, 737 F.2d at 833 ("land use planning is a sensitive area of social policy"); *Rancho Palos Verdes Corp. v. City of Laguna Beach,* 547 F.2d 1092, 1094–95 (9th Cir. 1976) (abstention appropriate in case involving "web of statutes" attempting to "grapple with difficult land use problems"). *Pullman* abstention is appropriate because these constitutional claims "touch a sensitive area of social policy into which the federal courts should not enter unless there is no alternative to adjudication." *Kollsman*, 737 F.2d at 833. The first *Pullman* element is satisfied.

Regarding the second element, YCWA's constitutional claims can be mooted or narrowed by resolution of the state law issues by the California court. To satisfy this element, state adjudication need only "reduce the contours" of the litigation. *C–Y Dev. Co. v. City of Redlands*, 703 F.2d 375, 380 (9th Cir. 1983). This factor is also met. YCWA's Complaint requests that the State Board's Section 401 Certification be set aside based on a host of alleged violations of state law. Pl.'s Complaint ¶¶ 114, 143–97. If YCWA succeeded on any of its state law claims, this Court would not need to decide whether the Section 401 Certification should be set aside for alleged violations of the federal Constitution. For example, YCWA alleges the State Board's Certification should be set aside for violating its own regulations implementing the Section 401 program, state delegation procedures, state procedural rules regarding hearings, state

open meeting laws, state environmental review requirements, and the state Constitution. Pl.'s Complaint ¶¶ 143–97.[18]

If the California state court finds that the State Board's issuance of or conditions in the Certification were unlawful under state law, there will be no need for this Court to reach whether the unlawful Certification violated the federal Constitution's Supremacy Clause or Due Process Clause. This is analogous to the Texas State Railroad Commission regulation in *Pullman* itself where the Court observed that if the Railroad Commission had no authority to promulgate the regulation in the first place, there was no need to decide whether it is constitutional. *Pullman*, 312 U.S. at 501. Here, "state adjudication of a purely state question could result in a termination of the controversy," or at least a narrowing of the controversy. *Rancho Palos Verdes*, 547 F.2d at 1095. Thus, the state law issues should be decided first by the state court in order to "avoid [potentially] unnecessary rulings on constitutional issues." *Rivera-Puig*, 983 F.2d at 322.

Finally, the third criterion is met because YCWA's state law claims are unsettled. The legality of the State Board's administrative procedures for issuing certifications, which are contained in California Code of Regulations, title 23, sections 3835–3838 and section 3831, has never been challenged. *See* Pl.'s Complaint ¶¶ 143–62. This includes the novel question of whether state law allows the State Board to issue a Section 401 certification following denial of an application. In addition, the specific question of whether the delegation of authority to the Executive Director in the State Board's regulations, title 23, section 3838, subdivision (a), is lawful under California Water Code sections 175, 181, and 13160 is novel and unsettled. Further,

---

[18] YCWA's claims that the State Board's executive director violated the federal Constitution's Supremacy and Due Process clauses are based, at least in part, on the same allegations. Pl.'s Complaint ¶ 124 (incorporating by reference ¶¶ 114, 143–97), 132–35, 138, 141–42.

whether California's sunshine law applicable to state agencies (the Bagley-Keene Open Meeting Act) applied to the State Board's issuance of the Certification will be a question of first impression. Pl.'s Complaint ¶¶ 163–68. Whether the process the State Board provided to YCWA in advance of issuance of the Certification, and the participation of a State Board employee in the process, complied with California's "fair trial" requirements embedded in the California Code of Civil Procedure, will also be a question of first impression. *Id*. ¶¶ 169–74. Finally, whether the State Board's issuance of the Certification was exempt from the California Environmental Quality Act under a statutory exemption the California Legislature adopted in June 2020 will also be a question of first impression. *Id*. ¶¶ 180–85; Cal. Water Code § 13160(b)(2). The Complaint is replete with questions of first impression under California law. The third *Pullman* element is also met.

In another context, the Supreme Court has observed that throughout federal involvement in western water policy, "there is a consistent thread of purposeful and continued deference to state water law by Congress." *California v. U.S.*, 438 U.S. 645, 653 (1978). The same animating principle suggests that the Court should similarly avoid reaching whether the State Board's actions to protect the State's scarce water resources in the arid west violates the federal Constitution if the case may be disposed of by California state courts on less weighty grounds.

### 2.   The *Colorado River* Doctrine Also Counsels In Favor of a Stay Pending Resolution of the Identical State Court Litigation

Alternatively, the Court should exercise "wise judicial administration" and stay the case under *Colorado River* in deference to the parallel—and nearly identical—state court litigation. *See Colo. River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817–20 (1976). A court may stay a case under *Colorado River* upon finding the existence of "exceptional circumstances" based on a series of factors including, the "inconvenience of the federal forum, the order in

35

which the courts assumed jurisdiction, the desirability of avoiding piecemeal litigation, whether federal or state law controls[,] and whether the state forum will adequately protect the interests of the parties." *Handy*, 325 F.3d at 352–53 (citing *Colorado River*, 424 U.S. at 817–18). "No one factor is necessarily determinative"; rather, "a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Colorado River*, 424 U.S. at 818–19. The decision whether to stay "does not rest on a mechanical checklist, but on a careful balancing of the important factors," and the "weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 16 (1983). "[I]t is not enough that the factors favoring deferral outnumber those opposed (or neutral). Rather, the factors favoring deferral must themselves be exceptional." *Edge Inv., LLC v. D.C*., 927 F.3d 549, 554 (D.C. Cir. 2019).

As a threshold matter, because *Colorado River* applies in the context of parallel state and federal court proceedings, a majority of the circuits require that "substantially the same parties are litigating substantially the same issues simultaneously in two fora." *AAR Int'l, Inc. v. Nimelias Enters. S.A*., 250 F.3d 510, 518 (7th Cir. 2001) (quoting *Schneider Nat'l Carriers, Inc. v. Carr*, 903 F.2d 1154, 1156 (7th Cir. 1990)). While the D.C. Circuit has apparently not yet adopted this test, this Court has applied it. *See Saddler v. AMEC Foster Wheeler Environment & Infrastructure, Inc.,* 253 F.Supp.3d 210, 219 (D.D.C. 2017). The parallel and largely identical state and federal cases filed by YCWA involving the same parties and arising from the same administrative action by the State Board easily satisfy this threshold inquiry. *Compare* Pl.'s Complaint *with* Exh. B.

Similarly, the *Colorado River* factors are also met, and exceptional circumstances justify a stay. First, the federal forum in D.C. District Court is much less convenient for both YCWA and State Defendants than the local California state action. In *Colorado River*, the Supreme Court concluded that "the 300-mile distance between the [federal court] and the [state] court," along with other factors, weighed in favor of abstention. 424 U.S. at 820. In cases involving parallel suits in this Court and the nearby D.C. Superior Court, this Court has observed that the factor is not met because "the physical distance between this Court and the D.C. Superior Court is closer to 300 *feet* than 300 *miles*." *Saddler*, 253 F.Supp.3d at 220 (emphasis in original); *see also Foster-el v. Beretta U.S.A. Corp.*, 163 F.Supp.2d 67, 71 (D.D.C. 2001). Here, however, the distance between courts is closer to 3,000 miles. This factor weighs in favor of a stay.

The second factor is neutral because the two cases were filed on the same day on opposite coasts.

The third factor—the desirability to avoid piecemeal litigation—is often the decisive factor in the *Colorado River* analysis, and here it too weighs in favor of a stay. Indeed, the Supreme Court recognized in *Colorado River* itself that the most important factor was the "avoidance of piecemeal adjudication of water rights in a river system." *Colorado River*, 424 U.S. at 819. The Eleventh Circuit has held that "[o]ne factor alone can be the sole motivating reason for the abstention." *Moorer v. Demopolis Waterworks & Sewer Bd.*, 374 F.3d 994, 997 (11th Cir. 2004).[19] "Piecemeal litigation occurs when different tribunals consider the same issue,

---

[19] Other decisions have likewise recognized the importance of the third factor in the multi-factor analysis. *See, e.g.*, *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 211 (2d Cir. 1985) ("danger of piecemeal litigation is the paramount consideration in this case"); *Ambrosia Coal & Const. Co. v. Pages Morales*, 368 F.3d 1320, 1329 (11th Cir. 2004); *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 842 (9th Cir. 2017) (piecemeal litigation is a "substantial factor").

thereby duplicating efforts and possibly reaching different results." *Foster-El*, 163 F.Supp.2d at 72 (quoting *Travelers Indemnity Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir.1990)). Because the state and federal cases filed by YCWA are largely identical and overlapping, there is a significant risk of duplicative and wasteful effort on the part of the state and federal judiciary, and the potential for conflicting judgments. Like in *Foster-El*, "allowing the proceedings to continue in this court would 'result in messy, piecemeal litigation' because the parties would 'litigate identical questions of law applied to identical facts in two separate forums.' . . . This could lead to 'contradictory or, at a minimum, irreconcilable rulings.'" *Id.* (citing *Hurley v. Heilig*, 28 F.Supp.2d 33, 35 (D.D.C. 1998)). This factor strongly weighs in favor of a stay.

The next factor—whether state or federal law controls—is a closer call but also weighs in favor of a stay. In analyzing this factor, this Court need not "find some substantial reason for the *exercise* of federal jurisdiction," *Moses H. Cone*, 460 U.S. at 25 (emphasis in original); "instead, it should consider whether the source of law provides justification for declining to exercise its jurisdiction," *Atkinson v. Grindstone Capital, LLC*, 12 F.Supp.3d 156, 165 (D.D.C. 2014). "The presence of federal law generally weighs against abstention, but there are 'some rare circumstances [where] the presence of state-law issues may [nonetheless] weigh in favor of [jurisdictional] surrender.'" *Id.* (quoting *Moses H. Cone*, 460 U.S. at 26).

While YCWA's Complaint includes a mixture of state and federal claims, on balance state law controls the outcome of the two cases. YCWA's claims involve numerous state water law issues, state administrative law claims, CEQA claims, and a Bagley-Keene open meetings law claim, among others. Many of these are peculiar, specialized issues of California law. For example, federal courts in California have repeatedly recognized the complexity inherent in CEQA cases. *See Robinson v. Salazar*, 838 F.Supp.2d 1006, 1038 n.15 (E.D. Cal. 2012) ("The

Court will not engage in any attempt to trivialize the scope, brea[d]th or complexity of CEQA.");
*Coal. for Clean Air v. VWR Int'l, LLC*, 922 F.Supp.2d 1089, 1108 (E.D. Cal. 2013); *see also*
*Fudge v. Laguna Beach*, 32 Cal.App.5th 193, 196 (2019) ("the brambled thicket" of CEQA is a
"complicated" area of the law). Because state law claims predominate and are complex, the
matter should be resolved in state court as the preferred forum. *See Foster-el*, 163 F.Supp.2d at
73 ("Because this matter involves difficult—and perhaps novel—questions of local law and
policy, the source-of-law factor favors abstention"); *American Bankers Ins. Co. v. First State Ins.
Co.*, 891 F.2d 882, 886 (11th Cir. 1990) (cases that "involve complex questions of state law . . .
would best be resolved by a state court"); *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New
York*, 762 F.2d 205, 210–12 (2d Cir. 1985) (abstention warranted because of novel state law
issues involving local safety codes); *cf. Giardina v. Fontana*, 733 F.2d 1047, 1051, 1053 (2nd
Cir. 1984) (abstention not warranted because state law issues were of "garden variety").

     Finally, the state forum fully protects YCWA's interests. The state courts possess special
expertise in resolving many of YCWA's state law claims. And the state court is equally capable
of resolving the federal constitutional claims. The Supreme Court has "consistently held that
state courts have inherent authority, and are thus presumptively competent, to adjudicate claims
arising under the laws of the United States." *Yellow Freight System, Inc. v. Donnelly*, 494 U.S.
820, 823 (1990) (internal quotation marks omitted). "When it is clear 'that the state court has
authority to address the rights and remedies at issue' this factor may weigh in favor of a stay."
*Montanore Minerals Corp. v. Bakie*, 867 F.3d 1160, 1169 (9th Cir. 2017) (quoting *R.R. Street &
Co. Inc. v. Transport Ins. Co.*, 656 F.3d 966, 981 (9th Cir. 2011)). Other circuits have similarly
found this factor favors a stay under *Colorado River*. *See, e.g.*, *Gen. Reinsurance Corp. v. Ciba-*

*Geigy Corp.*, 853 F.2d 78, 82 (2d Cir. 1988); *Ins. Co. of Pa. v. Syntex Corp.*, 964 F.2d 829, 835 (8th Cir. 1992). This factor is satisfied.

Having this Court expend limited judicial resources in this case is unnecessary and wasteful. Because four of the five factors under *Colorado River* weigh in favor of a stay of YCWA's federal case, and the remaining factor is neutral, exceptional circumstances exist for this Court to defer to the California state court's resolution of this matter.

## CONCLUSION

For the foregoing reasons, State Defendants respectfully request that this Court grant the motion to dismiss. In the alternative, State Defendants request that this Court exercise its inherent authority to voluntarily transfer the case to the Eastern District of California. If the Court declines to dismiss or transfer the case, State Defendants request that the Court stay this case pending the outcome of the Ninth Circuit litigation over FERC's waiver order and the nearly identical state court lawsuit.


Dated: February 8, 2021                           Respectfully submitted,


                                                  XAVIER BECERRA
                                                  Attorney General of California


                                                  /s/ Adam Levitan
                                                  Adam Levitan
                                                  Deputy Attorney General, CA SBN 280266
                                                  300 S. Spring Street, Suite 1702
                                                  Los Angeles, CA 90013
                                                  Telephone: (213) 269-6332
                                                  Email: Adam.Levitan@doj.ca.gov

                                                  Attorneys for Defendants the California State
                                                  Water Resources Control Board, Eileen Sobeck,
                                                  E. Joaquin Esquivel, Dorene D'Adamo, Tam M.
                                                  Doduc, Sean Maguire, and Laurel Firestone

**CERTIFICATE OF SERVICE**

I hereby certify that on February 8, 2021, I electronically filed the foregoing Motion to Dismiss, Transfer, or Stay, and Memorandum of Points and Authorities in Support by using the CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

/s/ Adam Levitan